MADELEINE MAESTRETTI MENDIVE, RELATOR, *v.* THIRD JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF LANDER, HON. D. W. PRIEST, JUDGE THEREOF, AND DON P. MAESTRETTI AND HELEN MAESTRETTI, RESPONDENTS.

No. 3728

February 26, 1953.        253 P.2d 884.

*Howard E. Browne,* of Reno, for Relator.

*George F. Wright* and *Ross P. Eardley,* of Elko, for Respondents Don P. Maestretti and Helen Maestretti.

52

## OPINION

By the Court, BADT, J.:

This is a proceeding in prohibition in which the relator seeks to prohibit the respondent court and judge from continuing with adoption proceedings initiated by the individual respondents. The relator's challenge of the jurisdiction of the Third judicial district court of Lander county to entertain the adoption petition is met by that court's challenge of the jurisdiction of the

Second judicial district court of Washoe county to entertain the relator's guardianship petition there. In determining these counter charges of lack of jurisdiction in the respective courts, a consideration of the facts and proceedings to date becomes necessary.

The minor child involved, David Vinn Adams, was orphaned at the age of less than five months while apparently domiciled in the state of California, and shortly thereafter was delivered into the custody of Madeleine Maestretti Mendive, the infant's maternal aunt, in the state of Nevada. Mrs. Mendive made an abortive attempt in Elko county, Nevada, to secure letters of guardianship there. This proceeding was dismissed, and she and her husband moved to Washoe county. The infant is still in her custody.

On September 13, 1952, while the infant was living with Mr. and Mrs. Mendive in Washoe county, the infant's maternal grandfather, Don P. Maestretti, and his wife, Helen Maestretti, filed a petition in the Third judicial district court, Lander county, for the adoption of the minor. On September 20, 1952 the judge of that court issued a citation directing Mrs. Mendive, as custodian of the minor, to show cause why said minor "should not be placed in the custody of Don P. Maestretti and Helen Maestretti, and why you should not be divested of the possession and custody of said David Vinn Adams." Such citation was served upon Mr. and Mrs. Mendive in Washoe county, September 22, 1952.

On September 30, 1952 Mrs. Mendive filed a petition in the Second judicial district court, Washoe county, praying for her appointment as guardian, and, upon the statutory 10-day posted notice,[1] was by that court

---

[1]Section 9495, N.C.L. 1929. "When necessary or convenient, guardians of the person and estate or either, of minors, who are inhabitants of, or reside in the county wherein application may be made * * * may be appointed as herein provided." Section 9496 id. Any relative or interested person may file the necessary petition whereupon "the clerk shall give notice of the hearing thereof by posting in three public places in the county * * *. The party petitioning shall also cause notice to be served upon any person in whose custody or care such minor or minors may be * * *."

appointed as guardian on October 11, 1952. At the time of her filing of her petition for appointment as guardian she had complete notice and knowledge of the pendency of the adoption petition and of the citation directing her to appear as above recited. Maestretti on the other hand, the petitioner for adoption in Lander county, had no notice or knowledge of the filing of the guardianship petition, the pendency of the guardianship proceeding or the order appointing guardian.

The citation issued by the adoption court was returnable October 17, 1952, at which time the attorney for the guardian appeared and challenged the jurisdiction of the adoption court and objected to the proceeding upon the grounds (1) that the adoption petition did not allege that the minor resided in Lander county, (2) that it did not allege that the minor had resided in the home of petitioners "for six months prior to the filing of the petition," and (3) that a guardian had been appointed for the minor "and there is no consent of said legal guardian to proposed adoption."[2] A certified copy of the letters of guardianship was admitted in evidence. The petitioners for adoption, through their counsel, contended "that the citation was for the purpose of placing the child in the home of petitioners to meet the requirement of said child being in the home of petitioners for the six months period required for adoption purposes." The adoption court overruled the objections of the guardian, denied her petition to dismiss the adoption proceedings and set the date of November 19, 1952 "as the time set for the purpose of taking evidence herein." No estate of the minor is involved.

[2]Section 1065, N.C.L. 1943–1949 Supp. "Any adult person may petition the district court in the county in this state wherein he has resided during the preceding six months for leave to adopt a minor child * . * *." Section 1065.02 id. With certain exceptions "no adoption shall be permitted except" with the consent of the parents or, failing a living parent, with the consent of the legal guardian or, failing such guardian, by the juvenile court. Section 1065.01. "No petition for adoption shall be approved until the child shall have lived for a period of six months in the proposed home."

Mrs. Mendive, the relator, then sought a writ of prohibition from this court. Attached to her petition are copies of the pleadings and proceedings above set forth. The grounds of the petition are the same as those raised in the objections to the jurisdiction of the Lander county court as above recited. The personal respondents, Don P. Maestretti and his wife, filed an answer herein alleging their lack of knowledge of the guardianship proceedings and alleging the knowledge of the guardian of the prior pending adoption proceedings and the active concealment by the guardian from the adopting petitioner of the pendency of the guardianship proceedings. Attached to such answer is an affidavit of Don P. Maestretti, the petitioner for adoption, to the effect that the guardian's attorney, at Battle Mountain, Lander county, Nevada, on September 29, had a conversation with affiant but did not mention the pending guardianship proceeding set for hearing for October 11. Attached also is an affidavit of John F. Sexton, the attorney for the petitioner for adoption, to the effect that on the same day he likewise had a conversation with the guardian's attorney at Battle Mountain but that the latter did not mention or refer to the pending guardianship proceedings. The guardian's reply to such answer, drawn by the guardian's attorney and signed and verified by the guardian before her said attorney as a notary public, curiously enough denies these allegations "for lack of information."

Both parties rely upon the familiar rule that when a court of competent jurisdiction acquires jurisdiction of the subject matter of a case, its authority continues subject only to the appellate authority until the matter is finally and completely disposed of, and that no court of coordinate authority is at liberty to interfere with its action. Metcalfe v. District Court, 51 Nev. 253, 274 P. 5. Respondents contend that under this rule, the petition for adoption having first been filed in the Third judicial

district court, in and for Lander county, that court assumed jurisdiction to the exclusion of the jurisdiction of the Washoe county court for guardianship or other proceedings affecting the custody of the minor.

1. We have first to dispose of the guardian's contention that the adoption petition filed in Lander county was so defective as not to invoke the jurisdiction of that court.

The guardian contends that under our statutes and by reason of the failure of the Lander county adoption petition to allege the residence of the minor in Lander county or to allege the petitioner's custody of the minor for six months or to allege the guardian's consent to the petition for adoption, the Lander county court acquired no jurisdiction over the matter. Our statute does not require that the minor be a resident of the county where the adoption petition is filed, and in this state such residence is not a jurisdictional requirement. Sec. 1065, N.C.L.1943–1949 Supp.; In re Wilson's Estate (Wilson v. Wilson), 95 Colo. 159, 33 P.2d 969. Recital of the statutory jurisdictional requirements is all that is necessary. In re Byran, 48 Nev. 352, 232 P. 776, 37 A.L.R. 527; Wilson v. Otis, 71 N.H. 483, 53 A. 439, 93 Am.St. Rep. 564. We may concede that under our statute, the consent of the parent or guardian (or, in a proper case, of the Juvenile court) and the continued custody of the minor by the adoptive parents for a period of six months, must be proved before the court may lawfully enter its order permitting the adoption. However, these two conditions are not required to be alleged in the petition, neither are they required to exist at the time of the filing of the petition, which, otherwise containing the statutory requisites, successfully invokes the jurisdiction of the court. The textwriter in 1 Am.Jur. 639, Adoption, sec. 36, n. 1, happily refers to such situation as the court's acquiring "provisional jurisdiction" to decide in due time whether these requisites have been

met.   Wilson v. Otis, 71 N.H. 483, 53 A. 439, 441, 93 Am.St.Rep. 564, cited in support of this conclusion, does not use the quoted term, but holds: "It is for the court, after having acquired jurisdiction by the filing of an appropriate petition, to decide in the first instance whether the parent has consented to a decree of adoption; * * * [This], with other preliminary questions that might be suggested, must be determined upon evidence, and a hearing by the judge, after he has acquired jurisdiction of the general subject-matter of the petition."

Accordingly we are of the opinion that while the Lander county adoption court may not be presently in position to make a lawful order permitting the adoption, its general jurisdiction over the subject matter still exists and is not destroyed at the present time either by the appointment of the guardian, the present lack of the guardian's consent or the present absence of the required six months' custody of the minor in the home of the petitioning adoptive parent.   It would be contrary to the public policy emphasized by virtually all of the legislatures and all of the courts to say that a minor was forever prevented from enjoying the benefits of an adopted child by reason of the bare fact that it had a legal guardian.   This is well expressed by the Supreme Court of California, In re Santos' Estates (Santos v. Santos), 185 Cal. 127, 195 P. 1055, 1057, in which the court said:

"Wherever possible, such a construction should be given adoption laws as will sustain, rather than defeat, the object they have in view.   Estate of McKeag, 141 Cal. 403, 74 Pac. 1039, 99 Am.St.Rep. 80.   The main purpose of adoption statutes is the promotion of the welfare of children, bereft of the benefits of the home and care of their real parents, by the legal recognition and regulation of the consummation of the closest conceiv-

able counterpart of the relationship of parent and child. While a guardian of the person of a minor is charged with a high duty and serious responsibility in the care of his ward, nevertheless the status of guardian and ward falls short of the close approximation to the relationship of parent and child which is attainable through actual adoption, culminating, as it does, in the child becoming a member, to all intents and purposes, of the family of the foster parents. The statutes in question should not, therefore, be construed so as to exclude an orphan in the custody of a guardian from the realization of the peculiar advantages to be derived from an adoption, unless such construction be unavoidable."

We are satisfied therefore that the prayer of the petition for prohibition that the respondent district court and judge be commanded "to desist and refrain from *any* further proceeding" in the adoption proceeding cannot be granted.

2. Our second concern is whether, with a validly subsisting adoption proceeding in Lander county, the Washoe county court had jurisdiction to entertain the petition for the appointment of guardian. Under the provisions of sec. 9495, N.C.L.1929, a guardian may be appointed of the person of a minor who is an inhabitant of or resides in the county wherein the application may be made "[w]hen necessary or convenient." The present case is illustrative of one of a number of situations where both convenience and necessity would call for the appointment of a guardian within the county of which an infant of tender years is an inhabitant despite the pendency of adoption proceedings in another county in the state.

Even in the case of existence of a divorce decree containing custodial provisions, the courts of California consistently, over a period of some 30 years, held in

favor of the right of the appointment of a guardian in a different jurisdiction in the state.[3] Although these cases were eventually disapproved in Greene v. Superior Court, 37 Cal.2d 307, 231 P.2d 821, Justices Spence and Shenk vigorously dissented. However that may be, it is clear that the subsistence of a custodial order in a divorce decree, subject as it is to present enforcement or to modification in a proper case by the court that entered the decree, is a far different thing from the mere subsistency of an adoption proceeding by a court whose provisional jurisdiction, under our statute, may never ripen into full jurisdiction to make an order of adoption. The statute grants no right to the adoption court to make any interim custodial orders. It is obvious that in such situation a guardianship court having jurisdiction of the minor could lawfully under our statute find that an appointment of a guardian was not only convenient but was absolutely necessary for the protection of the minor's person and property. The adoption statute itself recognizes this in requiring, under certain conditions, the consent of the guardian.

Accordingly our second conclusion is that the Washoe county court had jurisdiction to entertain the guardianship petition and that, under the record before us, Mrs. Mendive was lawfully appointed guardian by that court. In re Byran, 48 Nev. 352, 232 P. 776, 37 A.L.R. 527.

3. That conclusion however does not solve the problem. The Lander county court and the judge thereof have already commanded Mrs. Mendive to produce the minor in the Lander county court. It has already overruled objections to that order. It has already denied a motion to vacate that order in whole or in part. Unless restrained, it will proceed to hear and determine the question as to whether or not it will enter a final order

[3]Collins v. Superior Court, 52 Cal.App. 579, 199 P. 352; In re Guardianship of Kerr, 29 Cal.App.2d 439, 85 P.2d 145; Smith v. Smith, 31 Cal.App.2d 272, 87 P.2d 863; In re Guardianship of Burket, 58 Cal.App.2d 726, 137 P.2d 475; and In re Guardianship of Phillips, 60 Cal.App.2d 832, 141 P.2d 773.

upon the Maestretti petition that Mrs. Mendive deliver the custody of the minor to Mr. Maestretti to the end that he may have the minor's custody for six months so as to justify an order of adoption, other necessary conditions existing.

We are referred to no authority holding that an adoption court, under statutes such as ours, may, through the process of the issuance of a citation, compel a guardian or other custodian of an infant, residing with the infant in a different county, to bring such infant before the court and deliver its custody to the petitioning adoptive parent. It is a proceeding corresponding in all respects with the remedy of habeas corpus. In In re Adoption of D.... (Utah), 252 P.2d 223, 230, the court said: "We do not lose sight of the fact that there is a distinction between cases under habeas corpus where the issue is merely as to the right of present custody and cases such as the instant one, where adoption is sought." We are confronted by the fact that proceedings growing out of the citation would involve enforcement through proceedings in contempt. Neither directly nor by implication may our adoption statute be construed to permit this phase of the proceeding to go on. The proper assumption by the guardianship court of Washoe county of the physical control of the ward (sec. 9500, N.C.L. 1929) precluded interference of this kind. If the citation were to culminate in an order for the delivery of the child's custody to the adoptive petitioner, this would be a direct interference with the order of the guardianship court. This could not be done. Marr v. Superior Court, District Court of Appeal, Cal., 250 P.2d 739. It could not even have been accomplished by habeas corpus issuing out of the Lander county court. Sec. 8382, N.C.L.1929, Browne v. Superior Court, Cal.App., 95 P.2d 178.

It is unthinkable however that such situation would leave the parties in an impasse that would forever prevent the adoption of this child not yet two years old.

That the welfare of the child is the paramount consideration of the court in proceedings of any nature involving its custody was emphasized by this court in Ex Parte Schultz, 64 Nev. 264, 181 P.2d 585, 587. Adopting with approval expressions used by many other courts, we said that "the fundamental consideration is. the welfare of the infant"; that the weight of modern authority "places the interest of the child as the first consideration"; that "in all controversies arising respecting the custody of the child * * * the paramount consideration—the question of controlling importance—is the interest, welfare and happiness of the child." Many of the authorities are there collected in which this conclusion was uniformly reached, although the custodial issue arose under a variety of procedures and proceedings. We reaffirm the conclusion reached in the Schultz case, recently cited with approval in In re Adoption of D........ (Utah), 252 P.2d 223. This being so, we are confronted with the fact that in the proceedings had to date neither the Second judicial district court of Washoe county nor the Third judicial district court of Lander county has had the opportunity to determine by an examination of the facts or the presence of the parties whether the best interests of the child would be promoted by his adoption by his maternal grandfather and the latter's wife, or by his guardianship (possibly culminating in adoption) by his maternal aunt and the latter's husband. The appointment of guardian by the Washoe county court was the result of an ex parte hearing on the statutory 10 days' posted notice.[4] In like manner any attempt by the Lander county court to arrive at a proper conclusion was frustrated by the jurisdictional limitations of that court.

But the present guardian is but an arm of the district

---

[4]The situation suggests the consideration by the legislature of an amendment to our statute so as to require, like section 1441 of the California Probate Code and the statutes of other states, that notice be given "to such relatives of the minor residing in the state as the court or judge deems proper."

court of Washoe county. Matter of Ross, 6 Cal.App. 597, 92 P. 671. She could not arbitrarily and contrary to the best interests of the minor refuse her consent to the minor's adoption by the maternal grandfather. Her right to custody, being solely for the child's benefit, may be regulated, controlled or denied by the court if necessary in the promotion of the child's best interests. 25 Am.Jur. 42, Guardian and Ward, sec. 63, n. 9. In an appropriate proceeding before the Washoe county district court, upon due notice and with all of the interested parties before it, that court would be able to determine the best interests of the minor. It would be able to approve or disapprove the guardian's refusal to consent to the adoption. If that court should order the guardian, after full hearing, to consent to the adoption by the maternal grandfather, appropriate orders could be made to make such adoption possible. If, on the contrary, that court should approve the guardian's refusal to consent to the infant's adoption by its grandfather, it would definitely appear that the further jurisdiction of the Lander county district court over the grandfather's adoption proceeding would be futile and unavailing; that its present provisional jurisdiction could never ripen into a jurisdiction to make a final order permitting the adoption, dependent as such order would be upon the consent of the guardian and the adopting parents' continuous custody of the minor for six months. Under such situation the Lander county district court, upon being confronted with the final order of the Washoe county district court finding that in consideration of the best interests of the minor, the guardian's refusal to consent to the grandfather's adoption of the minor was proper and justified (if such should be the finding), would undoubtedly respect such order and judgment and dismiss the adoption proceedings pending before it. The Washoe county district court would then be free to entertain adoption proceedings by the maternal aunt, the present guardian.

The petition that respondents be restrained from *any* further proceeding in action No. 1038 is denied. Respondents are, however, prohibited from proceeding with the hearing growing out of the citation directing relator to show cause why said David Vinn Adams should not be placed in the custody of Don P. Maestretti and Helen Maestretti and why relator should not be divested of the possession and custody of said David Vinn Adams. No costs are awarded.

EATHER, C. J., and MERRILL, J., concur.